Court Of Appeals
Fourth Court of Appeals District of Texas
San Antonio





★ ★ ★       ★ ★ ★

# OPINION

No. 04-07-00103-CV

**EDWARDS AQUIFER AUTHORITY**,
Appellant/Cross-Appellee

v.

Burrell **DAY** and Joel McDaniel,
Appellees/Cross-Appellants

From the 218th Judicial District Court, Atascosa County, Texas
Trial Court No. 04-04-0294-CVA
Honorable Donna S. Rayes, Judge Presiding

Opinion by:     Steven C. Hilbig, Justice

Sitting:        Karen Angelini, Justice
               Phylis J. Speedlin, Justice
               Steven C. Hilbig, Justice

Delivered and Filed:   August 29, 2008

AFFIRMED IN PART; REVERSED AND RENDERED IN PART; REVERSED AND
REMANDED IN PART

All parties appeal the trial court's judgment following review of a permitting decision by the

Edwards Aquifer Authority ("the Authority"). The Authority claims the trial court erred in reversing

its final permitting decision. Burrell Day and Joel McDaniel ("Applicants") raise three issues

complaining of the trial court's failure to grant the relief they requested. We reverse that part of the

trial court's judgment overturning the Authority's Final Order, remand the cause to the trial court

for consideration of the Authority's claim for attorney's fees and for further proceedings on Applicants' unconstitutional taking claim, and in all other respects affirm the trial court's judgment.

## BACKGROUND

The Edwards Aquifer ("the Aquifer") is an underground system of water-bearing formations. *Barshop v. Medina County Underground Water Conservation Dist*., 925 S.W.2d 618, 623 (Tex. 1996). Water enters the Aquifer through the ground as surface water and rainfall and leaves the aquifer through well withdrawals and springflow. *Id.* As the "primary source of water for residents of the south central part of this state," it is vital to Texas's economy and welfare. *Id*. Because of likely increases in withdrawals from the Aquifer and the potential effects of a drought, the Legislature enacted the Edwards Aquifer Act in 1993 to manage the Aquifer and to sustain the diverse economic and social interests dependent on aquifer water.[1] *Id.* at 623-24; *see* Act of May 30, 1993, 73rd Leg., R.S., ch. 626, 1993 Tex. Gen. Laws 2350; as amended by Act of May 16, 1995, 74th Leg., R.S., ch. 524, 1995 Tex. Gen. Laws 3280; Act of May 29, 1995, 74th Leg., R.S., ch. 261, 1995 Tex. Gen. Laws 2505; Act of May 6, 1999, 76th Leg., R.S., ch. 163, 1999 Tex. Gen. Laws 634; Act of May 25, 2001, 77th Leg., R.S., ch. 1192, 2001 Tex. Gen Laws 2696; Act of May 27, 2001, 77th Leg., R.S., ch. 966, §§ 2.60-2.62, and 6.01-6.05, 2001 Tex. Gen. Laws 1991, 2021-22 and 2075-76; Act of June 1, 2003, 78th Leg., R.S., ch. 1112, § 6.01(4), 2003 Tex. Gen Laws 3188, 3193;

---

[1]The Act was originally passed on May 30, 1993, and was to take effect September 1, 1993. It did not become effective at that time because the United States Department of Justice refused to give preclearance under section 5 of the Voting Rights Act based on the appointment method used to select the Authority's board of directors. *Barshop*, 925 S.W.2d at 625. The Texas Legislature responded by amending the Act in May 1995, and changed the selection method to elective. *Id.* The Act was then to go into effect August 28, 1995. *Id.* However, certain plaintiffs filed suit challenging the facial constitutionality of the Act. Ultimately, the Texas Supreme Court declared the act facially constitutional. *Id*. at 638.

Act of May 28, 2007, 80th Leg., R.S., ch. 1351, §§ 2.01-2.12, 2007 Tex. Gen. Laws 4612, 4627; and Act of May 28, 2007, 80th Leg., R.S., ch. 1430, §§ 12.01-12.12, 2007 Tex. Gen. Laws 5848, 5901 (hereafter "the EAA Act" or "the Act"); *see also* TEX. CONST. art. XVI, § 59(a) (permitting Legislature to pass laws to conserve and develop state's natural resources).

The EAA Act created the Authority, a conservation and reclamation district empowered to implement a regulatory scheme to control and manage the use of the Aquifer. *Barshop*, 925 S.W.2d at 624; EAA Act, §§ 1.02, 1.08. In accordance with its mandate, the Authority allocates water and regulates permits within the guidelines of the Act. EAA Act, § 1.14. The Act creates a permit system that gives preference to "existing users," which are defined as those persons who withdrew and beneficially used groundwater from the Aquifer on or before June 1, 1993.[2] *Id.* §§ 1.03(10), 1.16; EDWARDS AQUIFER AUTHORITY RULES § 711.1(2) (2008) (hereafter "EAA RULES"). The Act allows existing users to apply for an initial regular permit ("IRP"). EAA Act § 1.16(a); EAA RULES § 711.98(c). Such permits will be granted to existing users who properly file a declaration of historical use and who establish, by convincing evidence, beneficial use by themselves or a predecessor in interest of underground water withdrawn during the historical period – June 1, 1972 through May 31, 1993. EAA Act §§ 1.16(a), (d); EAA RULES §§ 711.98(k), 707.611. The Act entitles an existing irrigation user to a permit "for not less than two acre-feet a year for each acre of land the user actually irrigated in any one calendar year during the historical period."[3] EAA Act § 1.16(e); *Barshop*, 925 S.W.2d at 624 n.2; *see* EAA RULES § 711.172(b)(2).

---

[2] Section 35.002(5) of the Texas Water Code defines "groundwater" as "water percolating below the surface of the earth." TEX. WATER CODE ANN. § 35.002(5) (Vernon 2008).

[3] An acre-foot is the amount of water that would cover an acre of land to one foot, approximately 325,850 gallons. *Barshop*, 925 S.W.2d at 624 n.1.

Applicants purchased a tract of property known as the Earl Baker Tract ("Baker Tract"). The Baker Tract contains an Aquifer well ("the well"). During the historical period, the well did not contain a functioning pump, had no meter, and had an uncontrolled, continuous artesian flow.[4] Applicants filed an application with the Authority for an initial regular permit ("IRP"), and later amended it by letter. Applicants sought authorization to pump 700 hundred acre-feet of water from the Edwards Aquifer to irrigate crops on the Baker Tract.[5] Based on the mandates of the Act, Applicants had to prove, by clear and convincing evidence: (1) beneficial use of groundwater from the Aquifer by themselves or a predecessor in interest during the historical period, and (2) the amount of water pumped and used without waste during any one year of the historical period. *See* EAA Act §§ 1.16(d), (e); EAA RULES §§ 711.98(k), 707.611. Because Applicants did not operate the well during the historical period, they submitted the affidavit of Billy T. Mitchell and Bret D. Mitchell, predecessors-in-interest with regard to the Baker Tract, in an effort to establish beneficial use during the historical period. The Mitchells' affidavit stated they leased the Baker Tract and "irrigated approximately 300 acres of Coastal Bermuda grass" from the well in 1983 and 1984. After reviewing their application and amendment, the Authority advised Applicants:

> . . . Authority staff has preliminarily found that your application provides sufficient convincing evidence to substantiate a portion of your declaration of historical use.

---

[4]An artesian well is one that penetrates an underground water-bearing unit that is under sufficient pressure to force water up and out of the top of the well hole without the necessity of a pump.

[5]Because the original well, which dated from 1956, was in disrepair, Applicants applied to construct a new well. The Authority granted the application, but noted the new well would require a groundwater withdrawal permit. Accordingly, Applicants filed a "Notice of Transfer and Application to Amend Initial Regular Permit Application" requesting that their original IRP application be amended to change the point of withdrawal to the new well. The Authority approved the transfer request but noted that by approving the change it was "not approving, denying, or taking any other action of any kind whatsoever" on Applicants' IRP application. McDaniel admitted in his deposition that he took the Authority's responses with regard to the new well and the transfer request to mean Applicants could drill a new well, but this did not necessarily mean they would get "pumping rights."

The Authority staff determined that your maximum beneficial use of water without waste during any one year of the historical period was **600** acre-feet and your average historical use was **600** acre-feet. Staff preliminary determinations are different from your claim for the following reasons:

Applicant supplied affidavit which stated that 300 acres were irrigated during 1983 and 1984.

The letter advised this was merely a preliminary determination and it was not "a final action by the Authority on your application."

The Authority conducted further investigation into the application and determined there was "[i]nadequate evidence of irrigation during the historical period." It sent a letter advising Applicants the Authority's general manager was going to recommend the board of directors deny the IRP, but Applicants could request a contested case hearing, which they did. *See* EAA RULES § 707.601-.602. In accordance with the Authority's rules, the matter was referred to the State Office of Administrative Hearings ("SOAH") for a hearing. *See* EAA RULES § 707.608.

In preparation for the hearing, the parties took the depositions of several witnesses, including Billy Mitchell and Joel McDaniel. Both depositions were admitted into evidence at the hearing. In his deposition, Mitchell described the methods of irrigation he used in 1983 and 1984 to irrigate 300 acres of Coastal Bermuda. Most of the acreage was irrigated from a 50-acre reservoir ("the Lake") by use of a pump and a mobile sprinkler system. Mitchell stated there was a ditch from the well to the Lake, and the water flowed from the well into the ditch and then into the Lake. They placed a pump in the Lake. The pump would draw water from the Lake into a mobile sprinkler irrigation system. Mitchell admitted he had no records of how much water they pumped out of the Lake and could not even estimate an amount. The sprinkler method was not the only irrigation

method used by the Mitchells. They would also dam up the ditch to irrigate by flooding. This method was only successful with regard to irrigating five to seven acres. Any attempt to irrigate additional acreage resulted in loss of control of the water.

McDaniel also gave a deposition. He testified Applicants intended to irrigate much like their predecessors did, by placing a pump in the Lake and drawing water into a sprinkler system. When questioned about the source of the water in the Lake, McDaniel admitted the Lake was fed not only by the ditch leading from the well, but by Post Oak Creek ("the Creek") and from "watershed" when it rains. He estimated that seventy-five percent of the Lake's water came from the well.

After completion of discovery and several preliminary hearings, a final adjudicative hearing was held before a SOAH Administrative Law Judge ("ALJ"). After considering the evidence submitted by the parties, the ALJ issued a Proposal for Decision ("PFD"). The ALJ made the following findings and conclusions relevant to the main irrigation method used by the Mitchells:

> [FOF] 19. Edwards Aquifer groundwater discharged from Applicant's well by the prior user was directed into a ditch and then into a lake at the bottom of the property.
>
> [FOF] 20. The prior user placed a pump in a lake at the bottom of the property, withdrew water from the lake, and irrigated approximately 150 acres[6] of Coastal Bermuda by means of a portable sprinkler irrigation system during the historical period.
>
> \*   \*   \*
>
> [COL] 7. [The] Creek and the lake on Applicant's property are watercourses and the water within those watercourses is state surface water and any irrigation from the lake was irrigation using state surface waters. TEX. WATER CODE ANN. §11.021(a) (2002); *Hoefs v. Short*, 273 S.W. 785 (Tex. 1925).
>
> [COL] 9. Irrigation from the lake on Applicant's property with surface water is regulated by the Texas Commission on Environmental Quality (TCEQ) and not by

---

[6]The finding of 150 acres rather than the 300 acres claimed by Applicants was based on evidence summarized by the ALJ in the PFD. This finding was upheld by the trial court and is not challenged on appeal.

the Authority and cannot be used as the basis for a permit authorizing use of water withdrawn from the Edwards Aquifer. *See* TEX. WATER CODE § 11.121 (2002).

The ALJ found Applicants had demonstrated beneficial use of groundwater through irrigation by flooding on seven acres during the historical period. Accordingly, she recommended the issuance of an IRP to Applicants authorizing the withdrawal of fourteen acre-feet of water per year. Applicants appealed to the Authority from the recommendation of the ALJ. On March 11, 2003, the Authority issued an order adopting the PFD in its entirety and granting Applicants an IRP for fourteen acre-feet ("the Final Order").

Applicants filed a petition in district court challenging the Final Order and asserting numerous constitutional claims relating to the decision and the process. In the conclusion to their petition, Applicants asked the trial court to reverse the Authority's Final Order, find Applicants irrigated three hundred acres of land during the historical period with water from the Aquifer, and remand the matter to the Authority to reconsider its decision in light such findings. Alternatively, Applicants asked the court to find in their favor on their constitutional claims.

Applicants filed a motion for summary judgment claiming they had proved as a matter of law water withdrawn by the Mitchells from the Lake was aquifer groundwater and therefore should have been considered as part of the basis for an IRP. They alleged the Authority and the ALJ erred as a matter of law in concluding the water used for irrigating 150 acres during the historical period was state water within the meaning of section 11.021(a) of the Texas Water Code rather than groundwater

from the Aquifer.[7]  The Authority filed a competing motion for summary judgment, arguing the decisions by the Authority and the ALJ were correct as a matter of law.

The trial court granted Applicants' motion for summary judgment, ruling the Authority erred as a matter of law in adopting the ALJ's conclusion that the Creek and the Lake are watercourses and the water within those watercourses is state water and any irrigation from the Lake was irrigation using state water.  The court ruled the water taken from the Lake by the Mitchells was groundwater. The trial court also granted motions for summary judgment filed by the Authority with regard to Applicants' constitutional claims.

The trial court rendered a final judgment incorporating its prior summary judgment rulings. With regard to Applicants' permit claims, the court reiterated its summary judgment rulings and further decreed that the ALJ's conclusion of law number nine, which stated that irrigation from the Lake could not be used as the basis for a permit authorizing use of water withdraw from the Edwards Aquifer, was error as a matter of law.  The court remanded the matter to the Authority with orders to (1) rescind the IRP originally issued to Applicants, and (2) issue Applicants an IRP in an amount based upon irrigation of 150 acres with Aquifer water.

The Authority and Applicants appealed.  The Authority raises a single issue, contending the trial court erred in granting Applicants' motion for summary judgment and concluding that water pumped from the Lake for irrigation was groundwater rather than state water.  Applicants raise three issues arguing the trial court erred in granting the Authority's motions for summary judgment on

---

[7]The Water Code defines "state water" as "water of ordinary flow, underflow, and tides of every flowing river, natural stream, and lake, and of every bay or arm of the Gulf of Mexico, and the storm water, floodwater, and rainwater of every river, natural stream, canyon, ravine, depression, and watershed in the state."  TEX. WATER CODE ANN. § 11.021(a) (Vernon 2008).

Applicants' constitutional claims and erred in upholding the Authority's denial of Applicants' well construction permit.[8]

### STANDARD OF REVIEW

We review a trial court's order granting summary judgment *de novo*. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). "When conducting a de novo review, the reviewing tribunal exercises its own judgment and redetermines each issue of fact and law." *Quick v. City of Austin*, 7 S.W.3d 109, 116 (Tex. 1998). No deference is given to the lower court's decision. *See id.* When both parties move for summary judgment on the same issue and the trial court grants one motion and denies the other, we consider the summary judgment evidence presented by both parties, determine all questions presented, and, if we determine the trial court erred, we must render the judgment the trial court should have rendered. *Valence*, 164 S.W.3d at 661.

The trial court reviewed the Applicants' challenge to the Authority's Final Order under the substantial evidence standard. *In re Edwards Aquifer Auth.*, 217 S.W.3d 581, 585 (Tex. App.–San Antonio 2006, orig. proceeding). By granting summary judgment to Applicants and denying same to the Authority with regard to the Final Order, the trial court found there was not substantial evidence to support the Authority's decision. Accordingly, we must determine whether the summary judgment proof established as a matter of law there was not substantial evidence to support the Authority's decision. *See Gardini v. Tex. Workforce Comm'n*, No. 03-03-00441-CV, 2004 WL 2558423, at *3 (Tex. App.–Austin Nov. 12, 2004, no pet.) (mem. op.) (citing *Potts v. Tex. Employment Comm'n*, 884

---

[8]As previously noted, the Authority did grant Applicant's well construction permit. Applicants contend it was, in reality, denied because even though they constructed the well they cannot pump water from it based on the denial of their request for an IRP for 600 acre feet.

S.W.2d 879, 882 (Tex. App.–Dallas 1994, no writ)). In doing so, we will compare the Authority's decision with the evidence presented to the trial court and the governing law. *Id*. (citing *Potts*, 884 S.W.2d at 883).

To the extent the resolution of the issues presented in this case involves statutory question, this is a question of law subject to *de novo* review. *See Bragg v. Edwards Aquifer Auth*., 71 S.W.3d 729, 734 (Tex. 2002). In construing a statute we must ascertain the Legislature's intent in enacting the statute. *Fleming Foods of Tex. v. Rylander*, 6 S.W.3d 278, 284 (Tex. 1999). In making this determination, we look to the plain meaning of the words used in the statute. *Bragg*, 71 S.W.3d at 734; *see* TEX. GOV'T CODE ANN. § 311.011(a) (Vernon 2005).

### ISSUES ON APPEAL

### *State Water or Groundwater*

The Authority argues Applicants' reliance on the water taken from the Lake to prove historical beneficial use is misplaced and the water in the Lake is state water. According to the Authority, once the water from the well entered a watercourse, it became state water and cannot serve as a basis for determination of the withdrawal amount allowed in an IRP. Applicants disagree, contending groundwater retains its character as groundwater even after it enters a watercourse.

Texas makes a distinction between state water and groundwater. "[W]ater of ordinary flow, underflow, and tides of every flowing river, natural stream, and lake, and of every bay or arm of the Gulf of Mexico, and the storm water, floodwater, and rainwater of every river, natural stream, canyon, ravine, depression, and watershed in the state is the property of the state," and is known as state or surface water. *See* TEX. WATER CODE ANN. § 11.021(a) (Vernon 2008). Groundwater, which is

"water percolating below the surface of the earth," is not governed by the laws and rules applicable to state water. *Id*. §§ 35.002(5), 35.003 (Vernon 2008). Water in Texas is governed by separate legal entities and different rules and laws depending upon the character of the water. Appropriation or diversion of state water is controlled by the Texas Commission on Environmental Quality and the laws and rules relating to the state water permitting process. *City of San Marcos v. Tex. Comm'n on Environmental Quality*, 128 S.W.3d 264, 272 (Tex. App.–Austin 2004, pet. denied); *see* TEX. WATER CODE ANN. §§ 11.022, 11.121 (Vernon 2008). Groundwater appropriation is regulated by local groundwater districts where they exist. *See* TEX. WATER CODE ANN. § 36.0015 (Vernon 2008). The Authority cannot regulate state water, but only groundwater "within or withdrawn from the aquifer." EAA Act § 1.08(b).

The Authority argues Texas law recognizes that the legal classification of water changes as water moves through the hydrologic cycle. Section 11.023 of the Texas Water Code provides storm and floodwater may be appropriated and placed in an aquifer for later removal, but when this state water is allowed to sink into the ground it "loses its character and classification as storm water or floodwater and is considered percolating ground water." TEX. WATER CODE ANN. § 11.023(c), (d) (Vernon 2008); *see Tex. Rivers Protection Ass'n v. Tex. Natural Resource Conservation Comm'n*, 910 S.W.2d 147, 153 (Tex. App.–Austin 1995, writ denied) (assuming state water diverted from river and stored in aquifer changes character and becomes groundwater).

It is well-settled that water becomes state water when it enters a "watercourse." *See* TEX. WATER CODE ANN. § 11.021(a) (Vernon 2008); *Dietrich v. Goodman*, 123 S.W.3d 413, 417 (Tex. App.–Houston [14th Dist.] 200, no pet.); *Domel v. City of Georgetown*, 6 S.W.3d 349, 353 (Tex. App.–Austin 1999, writ denied). The Texas Supreme Court established the criteria for a watercourse:

(1) a defined bed and banks, (2) a current of water, and (3) a permanent source of supply. *Hoefs v. Short*, 114 Tex. 501, 273 S.W. 785, 786-87 (1925). The bed and banks can be "slight, imperceptible, or absent" in some circumstances without loss of character as a watercourse. *Id*. at 787. Moreover, the current does not have to be continuous and there may even be periods where the stream or other water-bearing channel is dry for "long periods of time." *Id*. Finally, even an intermittent flow is sufficient to establish a watercourse. *Id*. at 786. *Hoefs* held a dry wash that usually flowed for a day or two after a rain five to six times a year was a watercourse. *Hoefs v. Short*, 190 S.W. 802, 804 (Tex. Civ. App.–El Paso 1916), *aff'd*, 273 S.W. 685 (1925).

The evidence here established:

- a federally-funded dam was built across the Creek on the property in the 1950s or 1960s
- the dam created a reservoir of approximately fifty-acres that existed throughout the historical period and became known as the fifty-acre lake
- the Lake is well-defined and identified on area maps
- the Lake has been described as "one of the best bass fishing holes in southwest Bexar County," attracts poachers, and has been used for skiing, duck hunting, and swimming; Applicants lease the lake for hunting and fishing
- the Lake has never dried up
- water is supplied to the Lake as follows: (1) artesian water from the well flows into a man-made ditch and into the Lake[9], and (2) runoff or surface water from the land flows into the Lake.

This evidence proves the Lake is a watercourse. Because the Lake is a watercourse, once water from the well entered the Lake, its character changed from groundwater subject to the control of the Authority and became state water subject to the control of the TCEQ.

---

[9]The evidence demonstrated the water from the well flowed into the ditch and to the Lake rather than into the creek bed above the Lake.

-12-

We recognize some authorities suggest that in certain circumstances groundwater may be placed in a river, transported downstream, and subsequently withdrawn from the river without immediately becoming state water. *See City of Corpus Christi v. City of Pleasanton*, 154 Tex. 289, 276 S.W.2d 798, 803-04 (1955)*; City of San Marcos*, 128 S.W.3d at 277-78; *Denis v. Kickapoo Land Co.*, 771 S.W.2d 235, 238-39 (Tex. App.–Austin 1989, writ denied). However, not one of these cases directly addresses whether the transported water retains its character as groundwater nor do they address the jurisdiction of a groundwater district with respect to such transported water. *See* Kevin Smith, Comment, *Texas Municipalities' Thirst for Water: Acquisition Methods for Water Planning*, 45 BAYLOR L. REV. 685, 711-12 (1993) (expressing surprise that court in *City of Corpus Christi* did not address character of water once it entered river, but opining it is arguable groundwater became state water when deposited into river). Even if there is an exception for the transportation of groundwater, it is inapplicable here because in each of those cases the owner of the groundwater exercised control over the water, knew the amount pumped into the watercourse, and withdrew approximately that same amount, or knew how much of the water was lost in transit and withdrew only the remaining water. Here, it is undisputed the well had no pump or meter when the Mitchells used water from the well for irrigation. There was no way to ensure the amount of water the Mitchells withdrew from the Lake for irrigation equaled the flow of water into the Lake from the well.

Moreover, the Legislature enacted section 11.042, which allows for the use of a watercourse to transport groundwater, but only where the amount subsequently removed or diverted does not exceed the amount of water put into the watercourse or the existing return flows. TEX. WATER CODE ANN. § 11.042(b), (c) (Vernon 2008). Here, when the evidence is reviewed under the appropriate standards, the control and knowledge of quantity required by the statute is absent:

•during the time the Mitchells were irrigating from the Lake, the well had no functioning pump, no meter, and was in a deteriorated condition with an uncontrolled, continuous artesian flow

•the well casing had collapsed into the well before 1983

•the quantity and rate of flow from the well during the historical period is unknown and unknowable

•the water flow from the well was unregulated

•Mitchell kept no records and cannot estimate how much water was withdrawn from the Lake

The Authority argues that because of the character of the water and the inapplicability of an exception based on transportation of groundwater, the trial court erred in granting Applicants' motion for summary judgment and denying its motion. Applicants contend the Authority's argument fails to distinguish between the different types of water that may enter a watercourse. They argue section 11.021(a), which defines "state water," does not include "groundwater" in its definition. *See* TEX. WATER CODE ANN. § 11.021(a) (Vernon 2008). Applicants contend this omission means groundwater can never become state water. We disagree. First, it is illogical to hold that while state water may become groundwater through storage in an aquifer, water flowing from an aquifer always retains its groundwater character. *See id.* § 11.023(d).; *see also Tex. Rivers Protection Ass'n*, 910 S.W.2d at 153. Furthermore, Applicants' argument that groundwater is forever groundwater because "groundwater" is excluded from the definition of state water is unreasonable. If followed to its logical conclusion, Applicants' contention would confer ownership of an undetermined amount of Hill Country water upon the owners of land containing springs from which many Texas rivers emanate. *See generally* TEXAS PARKS AND WILDLIFE, AN ANALYSIS OF TEXAS WATERWAYS (1974) (describing numerous Texas rivers, including the Frio, Guadalupe, Medina, Nueces, and Pedernales, as "spring-fed").

Applicants next contend, citing sections 36.001 and 36.002 of the Water Code, the Legislature has recognized groundwater and state water can be combined without either losing its original character. TEX. WATER CODE ANN. §§ 36.001(21), 36.002 (Vernon 2008). Section 36.001(21) defines "conjunctive use" as "the combined use of groundwater and surface water sources that optimizes the beneficial characteristics of each source." *Id.* § 36.001(21). Section 36.002 recognizes ownership rights of landowners and their lessees and assigns in groundwater, subject to rules promulgated by the relevant groundwater district. *Id.* § 36.002. Applicants' reliance on section 36.001(21) is misplaced because the definition has nothing to do with whether groundwater loses its identity upon entering a water course. Rather, "conjunctive use" is a water management strategy recognizing the reality that many water users rely on a combination of groundwater and state water for their water supplies. *See* TEX. WATER DEV. BD., *Water for Texas* 2007, Vol. II, 10.2.6, 270-71 (describing conjunctive use water management strategies as involving combined use of groundwater and state water to optimize beneficial characteristics of each).[10] And, though defined in Chapter 36 of the Water Code, the phrase is never actually used in Chapter 36 nor is it ever used in Chapter 11. The word "conjunctive" is used once in Chapter 36 in the section obligating each groundwater district to prepare a "management plan" that addresses certain "management goals" including "conjunctive surface water management issues." *See* TEX. WATER CODE ANN. § 36.1071(a)(4) (Vernon 2008).

We therefore sustain the Authority's issue and hold the trial court erred in granting Applicants' motion for summary judgment and in ruling water from the Lake was groundwater that could form the basis of an IRP. Accordingly, we reverse that part of the trial court's judgment and

---

[10]Section 16.051 of the Texas Water Code directs the Texas Water Development Board to "prepare, develop, formulate, and adopt a comprehensive state water plan" beginning in 2002 and every five years thereafter. TEX. WATER CODE ANN. § 16.051(a) (Vernon 2008). The plan is a guide to state water policy. *Id*. § 16.501(b).

render judgment affirming the Authority's Final Order. The Authority requests we remand this matter to the trial court with direction to address the Authority's request for attorney's fees. Applicants argue the Authority did not brief the attorney's fee issue and argue the issue is waived. We disagree. No specific point of error or issue was required because attorney's fees were contingent on the Authority's prevailing in the suit. *See id*. § 36.066(g). Having briefed the main issue, nothing more was required than to ask for remand for attorney's fees in the event our resolution favored the Authority. Applicants also argue section 36.066(g) is unconstitutional because it authorizes attorney's fees only to the Authority if it prevails and not to the citizen if the citizen prevails. Applicants do not provide any briefing on this issue. Rather, they refer us to a pleading filed in the trial court in which they objected to any award of attorney's fees to the Authority on the ground that section 36.066(g) is unconstitutional under the equal protection clause. Nevertheless, we will address their contention.

We evaluate an equal protection challenge to a statute that regulates groundwater using the rational basis test. *Barshop*, 925 S.W.2d at 631-32; *see* TEX. CONST. art. I, § 3. Under the rational basis test, a statue is valid under section 3 of Article I "as long as it is rationally related to a legitimate state purpose. *Id*. at 632. As long as the court "can conceive of any rational basis for the Legislature's action" it must uphold the challenged statute. *Owens Corning v. Carter*, 997 S.W.2d 560, 581 (Tex.), cert denied, 528 U.S. 1005 (1999). It is irrelevant whether the justifications the court may hypothesize were in fact the underlying basis for the Legislature's decision. *Id*.

The Legislature could have intended to discourage suits against groundwater districts to protect them from costs and burdens associated with such suits. Such protection is similar to the protection provided governmental entities under the sovereign immunity doctrine, which has withstood equal protection challenges. *See, e.g., Richards v. Tex. A&M Univ. Sys.*, 131 S.W.3d 550,

559-60 (Tex. App.–Waco, pet. denied), *cert. denied*, 543 U.S. 1002 (2004) (upholding state university's sovereign immunity from anti-retaliation suit when challenged under equal protection clause). Because section 36.066(g) is rationally related to a legitimate state interest, Applicants' equal protection challenge fails. Accordingly, we remand this matter to the trial court to consider the Authority's request for attorney's fees.

### *Constitutional and Other Issues*

In their cross-appeal, Applicants challenge the trial court's orders granting summary judgment in favor of the Authority on Applicants' constitutional claims. Applicants also raise, for the first time on appeal, issues arguing (1) the EAA Act's requirement of proof of prior historical use is unconstitutionally retroactive, (2) their IRP should have been considered under rules in effect at the time the IRP was filed, and (3) the Authority acted arbitrarily when it, in effect, denied their well construction permit.

### *Unconstitutional Taking*

Applicants asserted a claim in the district court that the Final Order resulted in a confiscation of their water rights, under color of law, without just compensation in violation of the Texas Constitution. *See* TEX. CONST. art. I, § 17 (stating no person's property shall be taken without adequate compensation). In its motion for summary judgment, the Authority argued Applicants' takings claim failed because they did not have a constitutionally protected vested interest in the groundwater. Applicants disagree and ask this court to reverse the trial court's judgment and "confirm the precedent of groundwater ownership as an unconditional component of land ownership."

This court recently held landowners have some ownership rights in the groundwater beneath their property. *City of Del Rio v. Clayton Sam Colt Hamilton Trust*, No. 04-06-00782-CV, 2008 WL 508682, *4 (Tex. App.–San Antonio Feb. 27, 2008, no pet. h.) (citing *Houston & T.C. Ry. Co. v. East*, 98 Tex. 146, 81 S.W. 279, 281 (1904)). Because Applicants have some ownership rights in the groundwater, they have a vested right therein. *See Tex. S. Univ. v. State St. Bank & Trust Co.*, 212 S.W.3d 893, 903 (Tex. App.–Houston [1st Dist.] 2007, pets. denied) (holding vested property right is one that has definitive, rather than potential, existence). Applicants' vested right in the groundwater beneath their property is entitled to constitutional protection. *See Subaru of Am., Inc. v. David McDavid Nissan, Inc.*, 84 S.W.3d 212, 219 (Tex. 2002) (holding vested right is property right protected by constitution). The trial court therefore erred in granting the Authority's motion for summary judgment on this constitutional claim. Because the Authority moved for summary judgment only on the ground Applicants have no vested property right, we must remand Applicants' constitutional taking claim for further proceedings.

*Substantive Due Process*

Applicants claimed in their petition the Act deprives them of substantive due process under the United States and Texas Constitutions by (1) requiring them to prove use of aquifer water during the historical period when such records were not required to be kept, thereby making this requirement impossible to meet, and (2) requiring proof of beneficial use of groundwater from the aquifer by "convincing evidence," without defining that term.[11]

---

[11]Applicants have not argued that any differences between the federal and state constitutional guarantees are material to this case and none is apparent. Accordingly, we will assume the protections of the United States Constitution are congruent with those of the Texas Constitution. *See New Times, Inc. v. Isaacks*, 146 S.W.3d 144, 150 (Tex. 2004), *cert denied*, 545 U.S. 1105 (2005).

A violation of substantive due process occurs only when the government deprives individuals of constitutionally protected rights by an arbitrary use of its power. *Byers v. Patterson*, 219 S.W.3d 514, 525 (Tex. App.–Tyler 2007, no pet.) (citing *Simi Inv. Co. v. Harris County,* 236 F.3d 240, 249 (5th Cir. 2000), cert. denied, 534 U.S. 1022 (2001)). A claimant prevails on a substantive due process claim by establishing it holds a constitutionally protected property right to which the Fourteenth Amendment's due process protection applies and by establishing that the challenged governmental action is not rationally related to furthering a legitimate state interest. *Id.* (citing *Simi Inv. Co.*, 236 F.3d at 249-50 and *Mikeska v. City of Galveston*, 451 F.3d 376, 379 (5th Cir. 2005)). The Authority's motion for summary judgment sought to negate the second element as a matter of law.

Applicants' first substantive due process claim was disposed of in *Barshop*. The court held the requirement that applicants prove beneficial use of aquifer water is related to the rational objective of conserving the aquifer, noting that without the historic proof requirement, the preservation goal could be frustrated by new wells. *Barshop*, 925 S.W.2d at 632. Article XVI, section 59(a) of the Texas Constitution "recognizes that preserving and conserving natural resources are public rights and duties." *Id*. The Act furthers these goals by regulating the Edwards Aquifer, which is a vital natural resource. *Id.* Accordingly, the provisions of the Act Applicants challenge "are all rationally related to legitimate state purposes in managing and regulating this vital resource" and are "sufficiently rational to meet constitutional due course requirements." *Id.* The trial court therefore did not err in granting summary judgment for the Authority on Applicants' substantive due process challenge to proof of use during the historical period.

Applicants also claim that requiring them to prove historic use by convincing evidence, when the standard is not defined, violates their substantive due process rights. Section 1.16a(d) of the Act

provides that an IRP shall be granted to an existing user who "establishes by convincing evidence beneficial use of underground water from the aquifer." EAA Act 1.16(d). The trial court granted the Authority's motion for summary judgment on the ground "convincing evidence" is a discernable standard and rationally related to the State's goal of conservation and preservation of natural resources.

In construing a statute, we ascertain the Legislature's intent from the words and terms used therein. *See Great Am. Ins. Co. v. N. Austin Mun. Util. Dist. No. 1*, 908 S.W.2d 415, 420 (Tex. 1995). Words should generally be given their ordinary meanings; however, if a word is "used as a word of art, the word shall have the meaning given by experts in the particular . . . subject matter, or art." TEX. GOV'T CODE ANN. § 312.002 (Vernon 2005). The function of a standard of proof, as embodied in the concept of due process, is to inform the factfinder about the degree of confidence he should have in his conclusions in a particular type of case. *In re G.M.*, 596 S.W.2d 846, 847 (Tex. 1980) (quoting *Addington v. Texas*, 441 U.S. 418, 423 (1979)). "Clear and convincing evidence" is a phrase clearly associated with an intermediate standard of review, between preponderance of the evidence and beyond a reasonable doubt. *See Addington*, 441 U.S. at 423-24. The United States Supreme Court explained this intermediate standard "usually employs some combination of the words 'clear,' 'cogent,' 'unequivocal,' [or] 'convincing' . . . [and] 'is no stranger to the civil law.'" *Id.* at 424 (quoting *Woodby v. I.N.S.*, 385 U.S. 276 (1966)). The Texas Supreme Court recognized the "clear and convincing standard of proof in 1979 and defined it as "that measure or degree of proof which will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *G.M.*, 596 S.W.2d at 847 (quoting *State v. Addington*, 588 S.W.2d 569 (Tex. 1979)). Accordingly, the Legislature's failure to define "convincing evidence" in the Act did

not affect Applicants' due process rights. "Convincing evidence" clearly refers to the intermediate standard of proof, similar to "clear and convincing evidence," which has been defined under Texas law. Accordingly, Applicants' substantive due process rights were not affected by the absence of a definition of "convincing evidence" in the Act.

The Texas Supreme Court has recognized that numerous provisions in the Act are rationally related to the legitimate state purpose of resource protection and conservation, including Texas aquifers. *See Barshop*, 925 S.W.2d at 933. Requiring permit applicants to abide by an elevated burden of proof in proving their beneficial use of a vital Texas resource is similarly rationally related to the goals of preservation and conservation. *See id.* The intermediate level of scrutiny is appropriate because requests to withdraw and use a vital state resource involve an interest more substantial than a mere loss of money. *See Addington*, 441 U.S. at 424. Moreover, the elevated standard serves to balance the competing interests of conservation and private use. The trial court therefore did not err in granting the Authority's motion for summary judgment on the second substantive due process claim.

### *Open Courts*

Applicants complain various statutes concerning the State Office of Administrative Hearings are unconstitutional under the "open courts" provision of the Texas Constitution, which states, in pertinent part, that "[a] courts shall be open, and every person for an injury done him, in his lands, goods, person or reputation, shall have remedy by due course of law." *See* TEX. CONST. art. I, section 13. This provision guarantees all litigants the right to redress their grievances. *LeCroy v. Hanlon*, 713 S.W.2d 335, 341 (Tex. 1986). This right is a substantial state constitutional right and therefore

the Legislature "cannot arbitrarily or unreasonably interfere with a litigant's right of access to the courts." *Id.* To determine whether a statute violates the open courts provision, we "balance[] the Legislature's actual purpose in enacting a law against that law's interference with the individual's right of access to the courts." *Id.*

In the trial court, Applicants argued sections 2001.061, 2001.090, and 2003.0412 of the Texas Government Code violate the open courts provision because they permit ex parte communications during the permitting process. On appeal, Applicants posit a different argument, contending the open courts provision is violated by the requirement that permit applicants prove use of an amount of water during the historical period. Applicants may not raise this constitutional argument for the first time on appeal. *See Dreyer v. Greene*, 871 S.W.2d 697, 698 (Tex. 1993) (holding that as general rule claim, including constitutional claim, must have been asserted in trial court to be raised on appeal). Moreover, Applicants' open courts argument fails. *See Barshop*, 925 S.W.2d at 637 (holding open court guarantees are not implicated by Authority's permitting process).

*Procedural Due Process*

Applicants next contend the statutes dealing with the SOAH and ex parte communications – sections 2001.061, 2001.090, and 2003.0412 of the Texas Government Code – violate their rights to due process because they permit ex parte conferences between Authority employees or board members and the ALJ. An ALJ is generally prohibited from communicating with a state agency. *See* TEX. GOV'T CODE ANN. § 2003.061(a) (Vernon 2000). The only exception is narrow and permits an ex parte communication between an ALJ and an agency employee "who has not participated in a hearing in the case for the purpose of using the special skills or knowledge of the agency and its staff

in evaluating the evidence." *Id.* § 2001.061(c). This narrow exception has been held to be constitutional in response to a procedural due process challenge. *Smith v. Houston Chem. Servs., Inc.*, 872 S.W.2d 252, 278 (Tex. App.–Austin 1994, writ denied).[12]

*Substantive Due Process – Section 11.021 of Texas Water Code*

The Authority also moved for summary judgment on Applicants' claims that (1) section 11.021 of the Texas Water Code violated their rights to substantive due process because it identifies the State of Texas as the owner of any water found in any watercourse on Applicants' property and thereby the real property beneath it, and (2) if section 11.021 does not vest the State with the ownership of the real property underlying the watercourse, then the State must compensate Applicants for use of the real property to transport its water.

Contrary to Applicants' assertion, section 11.021 of the Water Code does not give the State ownership of the real property beneath watercourses on private property. *See* TEX. WATER CODE ANN. § 11.021 (Vernon 2008). Rather, that section merely defines the types of water that belong to the State. *Id.* Even if the water in the watercourse is state water, Applicants are not entitled to compensation for the State's use of the watercourse to transport the state water. "[T]he State has the right to transport water through watercourses for a public purpose without seeking permission from any riparian owners." *Domel v. City of Georgetown*, 6 S.W.3d 349, 358 (Tex. App.–Austin 1999, pet. denied). As the owner of water in a variety of watercourses, the State has the right to use watercourses to meet "its constitutionally mandated duty to conserve and develop the State's water resources." *Id.* On this basis, the *Domel* court held a city was not required to seek a private

---

[12]Applicants never alleged an actual ex parte communication in this case.

landowner's permission to transport water in a watercourse across the property. *Id*. To hold otherwise would subject the State to a taking claim everywhere state water crosses private property. *Id*. at 359. This has never been the law in Texas. *Id*. If follows that if a governmental entity is not required to seek permission to transport its water across private property, it need not compensate the landowner for such use. *See id.* Accordingly, the trial court did not err is granting the Authority's summary judgment.

### *Other Claims*

Applicants attempt to raise additional theories and claims for the first time on appeal. Specifically claims that (1) the Act violates article I, section 16 of the Texas Constitution because the requirement of proof of previous historic use makes the Act a "retroactive law"; (2) section 245.002 of the Texas Government Code required the Authority to consider Applicants' application under the rules in effect when it was filed; and (3) the Authority acted arbitrarily with respect to Applicants' well-construction permit. Because these issues were not raised below, they cannot be raised on appeal. *See Dreyer*, 871 S.W.2d at 698.

Applicants also seek to relitigate the standard of review applicable in the trial court. This court has already determined the proper standard in the trial court for this matter is "substantial evidence," not "substantial evidence *de novo*" as suggested by Applicants. *Edwards Aquifer Auth*., 217 S.W.3d at 585. Accordingly, our previous holding is law of the case and not subject to challenge by Applicants in this appeal. *See Lee v. Lee*, 44 S.W.3d 151, 154 (Tex. App.–Houston [1st Dist.] 2001, pet. denied).

We overrule Applicants' constitutional issues and other claims and affirm the trial court's judgment with regard to these matters.

## CONCLUSION

For the reasons discussed above, we (1) reverse the part of the trial court's judgment that overturns the Authority's Final Order and render judgment affirming the Final Order; (2) reverse the take-nothing judgment against Applicants on their unconstitutional taking claim; (3) remand the cause to the trial court for consideration of the Authority's request for attorney's fees and for further proceedings on Applicants' unconstitutional taking claim; and (4) in all other respects affirm the trial court's judgment.

Steven C. Hilbig, Justice