

NUMBER 13-07-00585-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

RAYMOND GARCIA,                                                                    Appellant,

v.

CORPUS CHRISTI CIVIL SERVICE BOARD,                               Appellee.

On appeal from the 117th District Court of Nueces County, Texas.

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Yañez and Benavides**
**Memorandum Opinion by Justice Benavides**

After testing positive for cocaine, appellant, Raymond Garcia, was fired from his job with the City of Corpus Christi's Gas Department (the "City"). He appealed to the Corpus Christi Civil Service Board (the "Board"), which upheld the termination. Garcia then appealed to the district court, which granted summary judgment in favor of the City. Garcia

raises two issues on appeal: (1) whether the Board's decision was supported by substantial evidence, and (2) whether the Board's decision was arbitrary and capricious. We affirm.

## I. BACKGROUND

On November 23, 2004, pursuant to City policy, Garcia, a Senior Gas System Foreman in the City's Gas Department, was randomly selected for drug testing. Before his selection was made known to him, Garcia clocked in to work, organized his crew for the day, clocked out, and drove himself in a City vehicle to the Employee Assistance Program ("EAP"). At the EAP, Garcia communicated that he had a problem with substance abuse, and he sought help. Upon returning to the gas department, Garcia was informed that he was on the randomly generated list for drug screening that day. He provided a urine sample, which tested positive for cocaine.

On December 13, 2004, Garcia received a letter of "Contemplated Disciplinary Action" informing him that the director of gas operations was considering terminating his employment due to his violating City policies. The City alleged that Garcia violated City Policies HR 15.3 ("HR 15.3"), section IV, subsection A., which states, "An employee violates this anti-drug policy by: 1. Failing any drug test required under this policy." The City informed Garcia that he may be subject to disciplinary action under HR 15.3 because section V., subsection B. of HR 15.3 states, "The following violations of this Policy will result in disciplinary action up to and including termination: (2) Other violations of this policy . . . ." Additionally, the City informed Garcia that he had also violated City Policies HR 15.0 ("HR 15.0"). The City noted that HR 15.0 section V., subsection 3 prohibits

2

"[b]eing under the influence of alcohol or any unauthorized controlled substance or illegal drug while on duty." HR 15.0 further states, "The following violations of this Policy will result in automatic and mandatory termination upon first offense: B. Operating a City vehicle, motor driven equipment, machinery, or personal vehicle while on City business while under the influence of any illegal drug . . . ." On December 27, 2004, Garcia was provided a letter of "Termination" informing him and the Civil Service Board that his employment with the City was terminated.

Pursuant to the Rules and Regulations of the Civil Service Board of the City of Corpus Christi (the "Rules"), Garcia appealed the termination decision to the Board. *See* Corpus Christi, Tex., Rules & Regulations of the Civil Service Board art. IV, § 3 (July 13, 1999). On October 31, 2005, the Board began a hearing but decided to postpone it pending the amendment of some documents. On November 14, 2005, the Board held a hearing in which the City presented its evidence, including the fact that Garcia had previously tested positive for drugs, and Garcia presented his own evidence. Then, "[c]onsidering the evidence that had been presented, the fact that Mr. Garcia has failed a drug test as a City employee, not once, but twice, and the fact that [the Board has] a serious public safety issue at hand," the Board unanimously affirmed the termination of Garcia's employment.

Following procedure, Garcia perfected an appeal to the City Council, which affirmed the termination. *See* CORPUS CHRISTI, TEX., CITY CHARTER, art. VI, § 2. Garcia then

3

appealed to the district court.[1]  Both Garcia and the City moved for summary judgment, and the district court granted summary judgment in favor of the City.  This appeal ensued.

## II. SOVEREIGN IMMUNITY

The Board argues that the district court and this Court have no jurisdiction over Garcia's claims because he seeks monetary damages in addition to equitable relief for his constitutional claims.  *See City of Elsa v. M.A.L.*, 226 S.W.3d 390, 392 (Tex. 2007).  In his First Amended Petition, Garcia seeks reinstatement, lost benefits and wages, reasonable and necessary attorney's fees, and "damages for impairment of reputation, personal humiliation, and mental anguish and suffering."  Reinstatement is an equitable remedy. *See City of Seagoville v. Lytle*, 227 S.W.3d 401, 411 (Tex. App.–Dallas 2007, no pet.) (citing *Haynes v. City of Beaumont*, 35 S.W.3d 166, 183 (Tex. App.–Texarkana 2000, no pet.)).  Garcia asserts that he is seeking monetary damages only for his non-constitutional claims, or, in the alternative, that even if he is claiming money damages for his constitutional claims, mingling a request for money damages with a request for equitable relief for constitutional violations does not affect the jurisdiction of the trial court.  This Court has already stated, "a 'request for money damages does not affect the jurisdiction of the trial court over a claim of a violation of *article I, section 19*' even though there is no right to a money judgment for such a violation."  *City of Elsa v. M.A.L.*, 192 S.W.3d 678, 682 (Tex. App.–Corpus Christi 2006), *rev'd on other grounds*, 226 S.W.3d 390, 391-92 (Tex. 2007)

---

[1] Garcia does not cite statutory authority for his appeal to the district court.  *See Stephens v. City of Houston*, 260 S.W.3d 163, 169 (Tex. App.–Houston [1st Dist.] 2008, no pet.) ("It is well-established that there is no right to judicial review of an administrative order without an authorizing statute unless the order violates the constitutional rights of the plaintiff.") (citing *Houston Mun. Employees Pension Sys. v. Ferrell*, 248 S.W.3d 151, 158 (Tex. 2007)).  However, because Garcia claims the Board's order violates his constitutional rights, we conclude that appeal to the district court was proper.  *See id.*

(quoting *Nueces County v. Ferguson*, 97 S.W.3d 205, 221-22 & n. 23 (Tex. App.–Corpus Christi 2003, no pet.)). We conclude that whether Garcia sought both equitable relief and monetary damages for his constitutional claims does not, by itself, remove the entire case from the jurisdiction of the trial court and this Court. *Id.*; *see Ferguson*, 97 S.W.3d at 221-22 (noting, in dicta, that "[a]lthough a request for money damages does not affect jurisdiction of the trial court over a claim of a violation of article I, section 19, even when the State is a defendant, there is no right to a money judgment for such a violation.").

The Board next argues that, because Garcia "makes no reference to any specific actions in equity in his First Amended Petition . . . the only relief he requests for constitutional violations is money damages, over which this Court does not have jurisdiction." However, "in determining the nature of a lawsuit, we do not rely on the terms used to describe the cause of action but rather consider the facts alleged in the petition, the rights asserted, and the relief sought." *Ferguson*, 97 S.W.3d at 220-21 (citing *Karagounis v. Bexar County Hosp. Dist.*, 70 S.W.3d 145, 147 (Tex. App.–San Antonio 2001, pet. denied)). Here, Garcia claims that the Board's decision did not comply with the substantial evidence rule and that it failed to follow each step of the grievance procedure, which "adversely affected [Garcia's] vested property right and violated the Texas Constitution's provision of State due course of law." Garcia then seeks reinstatement as one form of relief and specifically prays for reinstatement in his "Prayer." Garcia's First Amended Petition clearly requests equitable relief, even though he also requests monetary damages.

Citing *King v. Texas Department of Human Services*, the Board asserts that, if this

5

Court determines Garcia's lawsuit is one for equitable relief, then by seeking reinstatement, Garcia is attempting "to control an official within his legal authority to act, from which attempt [the Board] is immune." 28 S.W.3d 27, 33 (Tex. App.–Austin, 2000, no pet.). In *King*, the appellant, King, challenged the Department of Human Services' decision to award to another person the position and promotion King sought. Stating, "[t]he trial court would have jurisdiction only to declare the hiring process invalid and set aside the agency's decision," the court held that King's request to vacate the award to the other person and to award the position and promotion to King violated sovereign immunity as an attempt to control an official acting within its legal authority. *Id.* Unlike King, however, Garcia seeks reinstatement to his previously held position and not to a different position. Garcia does not seek to control official actions. *See Ferguson*, 97 S.W.3d at 221 n.20; *Harris County v. Going*, 896 S.W.2d 305, 308-09 (Tex. App.–Houston [1st Dist.] 1995, writ denied) (noting that suits for reinstatement arising from constitutional violations are not prohibited by governmental immunity).

Finally, the Board alleges that this Court does not have jurisdiction over Garcia's claim because Garcia did not demonstrate a clear and unambiguous waiver of sovereign immunity. *See Tooke v. City of Mexia*, 197 S.W.3d 325, 331-33 (Tex. 2006). "[T]he state may not assert sovereign immunity to avoid a claim that it took property without due process of law. Although there is no cause of action for damages, a plaintiff whose constitutional rights have been violated may sue for equitable relief." *Bohannan v. Tex. Bd. of Criminal Justice*, 942 S.W.2d 113, 118 (Tex. App.–Austin 1997, writ denied). We conclude that we have jurisdiction over Garcia's claim.

6

## III. Substantial Evidence and Procedural Due Process

Garcia first argues that the Board's decision to uphold the termination of his employment was not supported by substantial evidence. In his second issue, Garcia asserts that the Board's decision was arbitrary and capricious because his due process rights had been violated.

### A. Summary Judgment Standard of Review

We review the trial court's order granting summary judgment de novo. *See Edwards Aquifer Auth. v. Day*, 274 S.W.3d 742, 751 (Tex. App.–San Antonio 2008, pet. filed) (citing *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex.2005)). "'When conducting a de novo review, the reviewing tribunal exercises its own judgment and redetermines each issue of fact and law.'" *Id.* (quoting *Quick v. City of Austin*, 7 S.W.3d 109, 116 (Tex. 1998)). We do not give deference to the trial court's decision. *See id.* "When both parties move for summary judgment on the same issue and the trial court grants one motion and denies the other, we consider the summary judgment evidence presented by both parties, determine all questions presented, and, if we determine the trial court erred, we must render the judgment the trial court should have rendered." *Id.* (citing *Valence*, 164 S.W.3d at 661).

The trial court reviewed the Board's decision under the substantial evidence standard of review. *See id.* By granting the City's motion for summary judgment and denying Garcia's, the trial court necessarily found that the Board's final order was supported by substantial evidence. *See id.* Therefore, we must determine whether the Board's actions were supported by substantial evidence.

**B.    Substantial Evidence**

*1.    Standard of Review*

"The substantial evidence standard of review does not allow a court to substitute its judgment for that of the agency." *R.R. Comm'n of Tex. v. Torch Operating Co.*, 912 S.W.2d 790, 792 (Tex. 1995). The reviewing court is not concerned with whether the agency's conclusion was correct; its concern is whether there is some reasonable basis in the record to support the agency's action. *Id.* "Substantial evidence requires only more than a mere scintilla, and 'the evidence on the record actually may preponderate against the decision of the agency and nonetheless amount to substantial evidence.'" *Id.* (quoting *Tex. Health Facilities Comm'n v. Charter Medical-Dallas, Inc.*, 665 S.W.2d 446, 452 (Tex. 1984)). We presume that the Board's decision is supported by substantial evidence, and Garcia has the burden to prove otherwise. *Granek v. Tex. State Bd. of Medical Exam'rs*, 172 S.W.3d 761, 778 (Tex. App.–Austin 2005, no pet.).

*2.    Analysis*

Garcia's argument that the Board's decision was not based on substantial evidence is combined with his assertions regarding due process violations. However, Garcia cites the correct standard by which we are to evaluate the Board's decision. The Board upheld the termination of Garcia's employment; thus, we are to determine whether "the evidence [as a whole] is such that reasonable minds could have reached the conclusion that the [Board] must have reached in order to justify its action." *Charter Medical-Dallas*, 665 S.W.2d at 453. We are "not bound by the reasons given by [the Board] in its order, provided there is a valid basis for the action taken by the [Board]." *Id.* at 452.

8

Laura Gallegos, a human resource analyst with the City, testified that Garcia tested positive for cocaine in violation of several sections of HR 15.0, which provides that certain violations require "automatic and mandatory termination upon first offense." Among other violations of HR 15.0, Garcia's driving to the drug testing center while under the influence of cocaine comprised operating a vehicle, while on City business and under the influence of cocaine, a direct breach of HR 15.0. Additionally, Gallegos testified that HR 15.3 was in effect when Garcia was randomly drug tested on November 23, 2004. 15.3 applied to Garcia, and he violated HR 15.3 when he tested positive for cocaine.

Keith Rose, M.D., a City medical review officer, testified that, on November 23, 2004, Garcia testified positive for cocaine.

Santiago Salinas, Garcia's supervisor, testified that Garcia must have taken a City vehicle to get his drug test and that Garcia did not comply with the reporting provision of HR 15.3. HR 15.3 section IX provides in relevant part that "[e]mployees who seek help through the Gas Superintendent, or designee, for a prohibited drug and/or alcohol related problem or addiction before it is discovered through poor performance or the employee is notified of testing authorized under this policy, shall be allowed to participate in a rehabilitation program . . . ."

Deborah Marroquin, director of the gas department, testified that HR 15.0 and HR 15.3 are "zero tolerance policies." She also agreed that, by signing the acknowledgment for HR 15.0, Garcia affirmed that he was "responsible for knowing and abiding by the contents of HR 15.3." Garcia's employment was terminated because he tested positive for cocaine without complying with HR 15.3's reporting provision.

9

Garcia does not challenge the test results, and, he acknowledges being governed by HR 15.0. Section VI of HR 15.0 makes the termination of employment automatic and mandatory upon the first occurrence of "[o]perating a City vehicle . . . while on City business while under the influence of any illegal drug . . . at any time as demonstrated by a positive drug test result from a test administered under [HR 15.0]." Garcia admitted that he drove a City vehicle to take the drug test in which he tested positive for cocaine. Looking at the evidence as a whole, we conclude that the evidence is such that reasonable minds could have concluded, as the Board did, that Garcia violated the City's policies and that the termination of his employment was warranted.

## C. Procedural Due Process

### 1. Standard of Review

Even though the Board's decision is supported by substantial evidence, it may still be arbitrary and capricious. *See Charter Medical-Dallas, Inc.*, 665 S.W.2d at 454. Such a situation arises when a person's procedural due process rights are violated. *See id.* The proceedings of an administrative agency must comport with due process of law. *Lewis v. Metro. Sav. & Loan Ass'n*, 550 S.W.2d 11, 14 (Tex. 1977); *see City of Arlington v. Centerfolds, Inc.*, 232 S.W.3d 238, 249-50 (Tex. App.–Fort Worth 2007, pet. denied). "At a minimum, due process requires notice and an opportunity to be heard at a meaningful time and in a meaningful manner." *Centerfolds, Inc.*, 232 S.W.3d at 250 (citing *Matthews v. Eldridge*, 424 U.S. 319, 333 (1976)). The amount of process due in a particular situation is determined by a flexible standard, measured by factors the Supreme Court set out in

*Matthews.*[2]  *See id.* (citing *Matthews*, 424 U.S. at 334).

To determine the requisite amount of process, we balance the following three factors:  "(1) the private interest affected by the state action; (2) the risk of erroneous deprivation of a constitutionally protected interest under the procedures used and the likely benefit of any additional procedures; and (3) the government's interest, including the fiscal and administrative burdens that additional procedural requirements would entail."  *Id.* (citing *Matthews*, 424 U.S. at 335).  "[An employee whose employment has been terminated] must be afforded an opportunity to present his version of the events both before and after termination; however, due process imposes different requirements at each stage because of the different interests present."  *Bexar County Sheriff's Civil Serv. Bd. v. Davis*, 802 S.W.2d 659, 662 (Tex. 1990).  "'An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under the circumstances, to apprise interested parties of the pendency of the action and afford them the opportunity to present their objections.'"  *Peralta v. Heights Med. Ctr., Inc.*, 485 U.S. 80, 84 (1988) (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)).

Garcia asserts five instances in which the Board violated his due process rights.  First, Garcia claims that he was only subject to HR 15.0 and not to 15.3; thus, according to Garcia, his employment should not have been terminated because (1) he was not

_____

[2] The parties do not dispute that Garcia has a constitutionally protected property interest in his continued employment with the City.  *See Bexar County Sheriff's Civil Serv. Bd. v. Davis*, 802 S.W.2d 659, 661 (Tex. 1990) ("An analysis of [a] procedural due process claim thus requires a two-part inquiry: whether [the defendant] was deprived of a protected interest and, if so, what process was due to safeguard that interest.").  In *Davis*, the defendant could be dismissed from employment only "for cause," which creates a protected interest in continuing employment.  *See id.* at 662 n.2 (citing *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 428 (1982)).  The parties agree that we have a similar situation before us.

11

required to report his drug problem to the Gas Superintendent or his designee before entering the City's Employee Assistance Program, and (2) he satisfied the reporting requirement of HR 15.0 by reporting his problem to the EAP before the problem manifested itself through poor performance. Second, Garcia claims that he received improper notice of the amended letters of Contemplated Disciplinary Action and Termination. Third, Garcia asserts that the Board improperly considered a prior drug offense. Fourth, Garcia claims that the City created "false documents" when it amended the letters of Contemplated Disciplinary Action and Termination to correct typographical errors. Finally, based on arguments made in the City's Motion for Summary Judgment, Garcia argues that the Board improperly considered offenses not included within the four corners of the Contemplated Disciplinary Action and Termination letters.

2. *City Policies HR 15.0 and City Policies HR 15.3*

a. City Policies HR 15.0

Garcia contends that he is only subject to HR 15.0 and not to HR 15.3 and by considering HR 15.3, the Board violated Garcia's due process rights. Garcia asserts that, under HR 15.0, because he "sought treatment prior to the problem becoming evident through declining job performance or before being requested by the City to take random drug test," he cannot be disciplined for being under the influence of cocaine while working on November 24, 2008.

City Policies HR 15.0 applies to all employees of the City of Corpus Christi. Garcia signed an "Acknowledgment Form," which stated that "compliance with [HR 15.0] is a condition of employment." Garcia asserts that, because he voluntarily sought diagnosis and potential treatment before his problems became evident through his job performance

12

or before he was randomly selected for a drug test, the Board's disciplinary action was improper. However, section IV of HR 15.0, to which Garcia cites, does not support his argument. The section merely allows the employee to enter into the "Employee Assistance Program" using the leave policies "currently available for other health-related problems." Section VI mandates employment termination upon the first instance of operating a City vehicle while under the influence of an illegal drug. Reading the policy as a whole and giving effect to each section, as we must, *see City of San Antonio v. City of Boerne*, 111 S.W.3d 22, 25 (Tex. 2003), we conclude that reading HR 15.0 as Garcia argues would lead to an absurd result. Termination could not be "automatic and mandatory" if there is a way to avoid it by preemptively seeking help. Section VI does not provide a reporting exception, and we will not read one into the policy.

b. City Policies HR 15.3

Garcia asserts three reasons for why he is not subject to HR 15.3. First, there is no acknowledgment form, signed by Garcia, indicating that he received a copy of or training on HR 15.3 after he returned to the gas department, as there is for HR 15.0. Second, Garcia claims that the City's training indicated, until Garcia's dismissal, that an employee could seek help from the EAP and be protected from disciplinary action without having to go through the gas superintendent or his designee. Finally, the letters of Contemplated Disciplinary Action and Termination did not indicate that Garcia received or signed any City policies during 2004, and the City is bound by the letters and cannot allege matters outside of the letters.

Initially, we note that Garcia did sign an acknowledgment form for HR 15.0. That form notified Garcia that he "may also be subject to the provisions of . . . City Policies HR

13

15.3 . . ." and that if he was "covered by more than one City [of Corpus Christi] alcohol and drug Policy, . . . [he] must remain in compliance with each Policy which applies to the position [he holds] as a condition of employment . . . ." Garcia also testified that he was subject to HR 15.3, which is some evidence that he was required to comply with HR 15.3. *See Mendoza v. Fidelity & Gty. Ins. Underwriters, Inc.*, 606 S.W.2d 692, 694 (Tex. 1980) (noting that a party's "testimonial declarations which are contrary to his position are quasi-admissions," which are some evidence but not conclusive evidence).

Garcia presented testimony and affidavits from five gas department foremen. Each foreman contended that he had not been told that to be protected under the EAP, an employee had to seek help through the gas superintendent or his designee, as required by HR 15.3. Each foreman testified that it was his understanding that if he went to the EAP, his employment would be protected even if he did not report his problem to the gas superintendent or his designee.

Gallegos testified that employees are trained on HR 15.3 once a year, and prior to such training, each employee is provided with a copy of the policy. Gallegos also acknowledged that, even without a signed acknowledgment form, employees must still comply with the City's drug policies. Garcia's position as a Senior Gas System Foreman is listed as a position covered by HR 15.3. Further, HR 15.3 states that "[e]mployees who perform duties which involve gas operations, maintenance and emergency-response functions are 'covered employees' under [15.3]." As a Senior Gas System Foreman, Garcia was responsible for, among other things, constructing, installing, and maintaining the "Natural Gas Distribution System," and responding to emergency service calls.

We conclude that Garcia was subject to HR 15.3. Not only did he testify that he was

14

covered by the policy, he signed the HR 15.0 acknowledgment form recognizing that he may be subject to HR 15.3. Additionally, his position was one specifically listed by HR 15.3 as covered by the policy, and as Gallegos testified, the employees received training at least annually on HR 15.3. We agree with the Fort Worth Court of Appeals that

> [i]n law whatever fairly puts a person on inquiry is sufficient notice, where the means of knowledge are at hand, which if pursued by the proper inquiry the full truth might have been ascertained . . . . [A]ctual knowledge embraces those things of which the one sought to be charged has express information, and likewise those things which a reasonably diligent inquiry and exercise of the means of information at hand would have disclosed.

*Burlington Northern Railroad Co. v. Akpan*, 943 S.W.2d 48, 51 (Tex. App.–Fort Worth 1997, no writ) (quoting *Hexter v. Pratt*, 10 S.W.2d 692, 693 (Tex. Comm'n App. 1928, judgm't adopted)). Because Garcia was subject to HR 15.3, to be protected by that policy's reporting provision, he must have sought help through the Gas Superintendent or his designee. Having failed to do so, Garcia is not protected by the reporting provision.

Finally, Garcia argues that the Contemplated Disciplinary Action and Termination letters did not reference HR 15.3. However, the letters of Contemplated Disciplinary Action and Termination admitted into evidence and included in the record both refer to HR 15.3. We conclude that the Contemplated Disciplinary Action and Termination letters referred to HR 15.3.

### 3. *Contemplated Disciplinary Action and Termination Letters*

Garcia next asserts that his due process rights were violated because the City failed to properly serve amended versions of the Contemplated Disciplinary Action and Termination letters upon Garcia. Article IV, section 1 of the Rules states, "Notice of suspension shall be personally delivered to the employee or the employee's designee or

15

shall be mailed by certified mail, return receipt requested, to the employee's last known address as noted in the employee's file in the Human Resources Department." Corpus Christi, Tex., Rules & Regulations of the Civil Service Board art. IV, § 1 (July 13, 1999). Garcia admits that the City properly served the original versions of the letters on him, but complains that the City sent the amended versions via fax and certified mail to Garcia's attorney.

The Rules do not provide a method of service for amended notices of disciplinary proceedings. The Rules do permit notice of the setting of a hearing of an appeal to be "given to the employee or the employee's designee. . . ." *Id.* The rules of civil procedure also permit serving a party's designee with notice in the same manner as those utilized here. *See* Tex. R. Civ. P. 21a. Due process is meant to be flexible and based on the procedural protections demanded by the situation. *Matthews*, 424 U.S. at 334. We conclude that, in the present case, because service of the original letters was properly completed, Garcia's due process rights were not violated when the City served its amended letters on Garcia's attorney.

4.    *Prior Positive Drug Test*

Garcia complains that the Board based its decision, at least in part, on the fact that Garcia had previously tested positive for cocaine. The Board said, in open session, when deciding to uphold the termination of Garcia's employment, "the fact that Mr. Garcia has failed a drug test as a City employee, not once, but twice, and the fact that we have a serious public safety issue at hand . . . ." Garcia asserts that it was error for the Board to base its decision on this fact because the Contemplated Disciplinary Action and

16

Termination letters did not mention the prior positive test as a basis for the termination. Garcia did not object when the evidence was presented to the Board.

In deciding whether to uphold the City's decision, the Board's decision will be "based on findings on the evidence presented." Corpus Christi, Tex., Rules & Regulations of the Civil Service Board art. IV, § 4 H.3. (July 13, 1999). "Evidence will be admitted if it is of that quality which responsible persons are accustomed to rely on in the conduct of serious affairs." *Id.* art. IV, § 4 D.1. "Technical rules of legal and court procedure do not apply. The presiding officer rules on the admissibility of evidence." *Id.* "Formal exception to the ruling of the presiding officer is not necessary. It is sufficient if the party at the time the ruling is made or sought makes known to the presiding officer the actions desired." *Id.* art. IV. § 4 D.5.

Nowhere does the record indicate that Garcia made known to the presiding officer of the Board that he did not want Board to consider his prior positive test. There was no formal objection at the time the prior test was offered and admitted. There was no time at which Garcia informed the Board that it should not consider the prior test in its deliberations. Because Garcia did not make his complaint known to the Board, and because the Board's decision is to be "based on findings on the evidence presented," we conclude that the Board did not err by considering Garcia's prior positive test. *Id.* art. IV. § 4 H.3.

5*. Corrected Dates in the Letters of Contemplated Disciplinary Action and Termination*

Garcia complains that in amending the Contemplated Disciplinary Action and Termination letters, the City changed several dates, thereby making the documents "false."

17

The City changed the two dates on which Garcia had applied for employment: July 25, 1996 was changed to June 10, 1996 and April 23, 2003 was changed to February 25, 2003. The City also changed the date in the letter which stated the day on which Garcia received drug policy training: May 28, 2003 was changed to April 28, 2003.

As the Board acknowledged, the amendments were to correct typos. The amended letters did not change the substance of the letters, nor the reasons for disciplinary action listed in the letters. In fact, the date change on the drug policy training was in direct compliance with the Board's ordering, during its hearing on October 31, 2005, that the date be changed. We believe that the letters, having been amended to correct typographical errors, still meet the basic standard for proper notice, notice that is "'reasonably calculated, under the circumstances, to apprise interested parties of the pendency of the action and afford them the opportunity to present their objections.'" *Peralta*, 485 U.S. at 84 (quoting *Mullane*, 339 U.S. at 314).

6. *Scope of Notice and Board's Considerations*

Garcia argues that the Board based its decision to terminate Garcia's employment on actions not listed in the letters of Contemplated Disciplinary Action and Termination. Garcia bases this argument upon claims made by the City during summary judgment proceedings. During those proceedings, the City argued that substantial evidence exists of (1) Garcia's testing positive for cocaine on November 23, 2004; (2) Garcia's admission to the Board that he put his and other's lives in jeopardy by working under the influence of cocaine on November 23, 2004; (3) Garcia's having driven a City vehicle, on November 23, 2004, while under the influence of cocaine; and (4) Garcia's prior positive drug test. We note that both letters referred to the positive drug test on November 23, 2004, and driving

18

a City vehicle while under the influence of cocaine.

Because this is a de novo review of the Board's decision, we "exercise[ ] [our] own judgment and redetermine[ ] each issue of fact and law." *See Day*, 274 S.W.3d at 751. We do not consider the arguments made during the summary judgment proceedings because we are not bound by the trial court's rulings. *See id.* Therefore, we do not consider the City's arguments at the summary judgment hearing before the trial court in determining whether Garcia's due process rights were properly observed during the proceedings before the Board. Garcia bases this specific complaint on the City's arguments during summary judgment, and we will not review those as part of our de novo review of the Board's decision. We overrule Garcia's final due process argument.

7. *Matthews v. Eldridge*

The first factor in the *Matthews* test, the employee's interest in keeping his job, is significant. *See Davis*, 802 S.W.2d 659 at 663. However, the risk of erroneous deprivation of Garcia's job, based on the facts of this case, is minimal. *See Matthews*, 424 U.S. at 335; *Davis*, 802 S.W.2d at 663. "The notice actually provided to [Garcia], along with the rights granted him to confront and cross-examine the [City's] witnesses and to present his own witnesses, guaranteed that all relevant matters were adequately presented for consideration by the Board." *See Davis*, 802 S.W.2d at 663. Before the hearing, Garcia was provided with a list of the charges against him, mainly that he had violated City policy by testing positive for cocaine on November 23, 2004. During the hearing, the City's witnesses testified in Garcia's presence, and he was able to extensively cross examine them and to object to any evidence. Garcia called his own witnesses to testify in his

19

defense.  The record shows that Garcia was not surprised during the hearings and that he was fully prepared to defend himself.  Garcia even admitted that he failed the drug test in violation of City policies.  The probable value of additional safeguards, including more strenuous notice provisions relating to amended letters, is negligible.  Thus, the second *Matthews* factor favors the City.  *See Matthews*, 424 U.S. at 335.

The fiscal and administrative burdens on the City would be great.  *See id.*  Among other things, under Garcia's suggestions, the City would be required to foresee every possible fact to which testimony would be given, so that the City could include it in its letters to the employee.  We do not believe that such a burden on the City would have produced a more fair hearing nor that it would improve the accuracy of the decision-making process.  *See Davis*, 802 S.W.2d at 664.  "Due process does not require that every administrative proceeding contain the full procedural framework of a civil trial. '[D]ue process is not so rigid as to require that the significant interests in informality, flexibility, and economy must always be sacrificed.'" *Id.* (quoting *Gagnon v. Scarpelli*, 411 U.S. 778, 788 (1973)).  We overrule Garcia's second issue on appeal.

## IV.  CONCLUSION

Having overruled Garcia's issues, we affirm the judgment of the district court.

GINA M. BENAVIDES,
Justice

Memorandum Opinion delivered and
filed this the 16th day of July, 2009.

20