NUMBER 13-07-00585-CV



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG 


 


RAYMOND GARCIA, Appellant,


v.



CORPUS CHRISTI CIVIL SERVICE BOARD, Appellee.

 




On appeal from the 117th District Court of Nueces County, Texas.


 


MEMORANDUM OPINION



Before Chief Justice Valdez and Justices Yañez and Benavides


Memorandum Opinion by Justice Benavides


 After testing positive for cocaine, appellant, Raymond Garcia, was fired from his job
with the City of Corpus Christi's Gas Department (the "City"). He appealed to the Corpus
Christi Civil Service Board (the "Board"), which upheld the termination. Garcia then
appealed to the district court, which granted summary judgment in favor of the City. Garcia
raises two issues on appeal: (1) whether the Board's decision was supported by
substantial evidence, and (2) whether the Board's decision was arbitrary and capricious. 
We affirm.I. Background

 On November 23, 2004, pursuant to City policy, Garcia, a Senior Gas System
Foreman in the City's Gas Department, was randomly selected for drug testing. Before his
selection was made known to him, Garcia clocked in to work, organized his crew for the
day, clocked out, and drove himself in a City vehicle to the Employee Assistance Program
("EAP"). At the EAP, Garcia communicated that he had a problem with substance abuse, 
and he sought help. Upon returning to the gas department, Garcia was informed that he
was on the randomly generated list for drug screening that day. He provided a urine
sample, which tested positive for cocaine.

 On December 13, 2004, Garcia received a letter of "Contemplated Disciplinary
Action" informing him that the director of gas operations was considering terminating his
employment due to his violating City policies. The City alleged that Garcia violated City
Policies HR 15.3 ("HR 15.3"), section IV, subsection A., which states, "An employee
violates this anti-drug policy by: 1. Failing any drug test required under this policy." The
City informed Garcia that he may be subject to disciplinary action under HR 15.3 because
section V., subsection B. of HR 15.3 states, "The following violations of this Policy will
result in disciplinary action up to and including termination: (2) Other violations of this
policy . . . ." Additionally, the City informed Garcia that he had also violated City Policies
HR 15.0 ("HR 15.0"). The City noted that HR 15.0 section V., subsection 3 prohibits
"[b]eing under the influence of alcohol or any unauthorized controlled substance or illegal
drug while on duty." HR 15.0 further states, "The following violations of this Policy will
result in automatic and mandatory termination upon first offense: B. Operating a City
vehicle, motor driven equipment, machinery, or personal vehicle while on City business
while under the influence of any illegal drug . . . ." On December 27, 2004, Garcia was
provided a letter of "Termination" informing him and the Civil Service Board that his
employment with the City was terminated.

 Pursuant to the Rules and Regulations of the Civil Service Board of the City of
Corpus Christi (the "Rules"), Garcia appealed the termination decision to the Board. See
Corpus Christi, Tex., Rules & Regulations of the Civil Service Board art. IV, § 3 (July 13,
1999). On October 31, 2005, the Board began a hearing but decided to postpone it
pending the amendment of some documents. On November 14, 2005, the Board held a
hearing in which the City presented its evidence, including the fact that Garcia had
previously tested positive for drugs, and Garcia presented his own evidence. Then,
"[c]onsidering the evidence that had been presented, the fact that Mr. Garcia has failed a
drug test as a City employee, not once, but twice, and the fact that [the Board has] a
serious public safety issue at hand," the Board unanimously affirmed the termination of
Garcia's employment.

 Following procedure, Garcia perfected an appeal to the City Council, which affirmed
the termination. See Corpus Christi, Tex., City Charter, art. VI, § 2. Garcia then
appealed to the district court. (1)
 Both Garcia and the City moved for summary judgment, and
the district court granted summary judgment in favor of the City. This appeal ensued.

II. Sovereign Immunity


 The Board argues that the district court and this Court have no jurisdiction over
Garcia's claims because he seeks monetary damages in addition to equitable relief for his
constitutional claims. See City of Elsa v. M.A.L., 226 S.W.3d 390, 392 (Tex. 2007). In his
First Amended Petition, Garcia seeks reinstatement, lost benefits and wages, reasonable
and necessary attorney's fees, and "damages for impairment of reputation, personal
humiliation, and mental anguish and suffering." Reinstatement is an equitable remedy. 
See City of Seagoville v. Lytle, 227 S.W.3d 401, 411 (Tex. App.-Dallas 2007, no pet.)
(citing Haynes v. City of Beaumont, 35 S.W.3d 166, 183 (Tex. App.-Texarkana 2000, no
pet.)). Garcia asserts that he is seeking monetary damages only for his non-constitutional
claims, or, in the alternative, that even if he is claiming money damages for his
constitutional claims, mingling a request for money damages with a request for equitable
relief for constitutional violations does not affect the jurisdiction of the trial court. This Court
has already stated, "a 'request for money damages does not affect the jurisdiction of the
trial court over a claim of a violation of article I, section 19' even though there is no right to
a money judgment for such a violation." City of Elsa v. M.A.L., 192 S.W.3d 678, 682 (Tex.
App.-Corpus Christi 2006), rev'd on other grounds, 226 S.W.3d 390, 391-92 (Tex. 2007)
(quoting Nueces County v. Ferguson, 97 S.W.3d 205, 221-22 & n. 23 (Tex. App.-Corpus
Christi 2003, no pet.)). We conclude that whether Garcia sought both equitable relief and
monetary damages for his constitutional claims does not, by itself, remove the entire case
from the jurisdiction of the trial court and this Court. Id.; see Ferguson, 97 S.W.3d at 221-22 (noting, in dicta, that "[a]lthough a request for money damages does not affect
jurisdiction of the trial court over a claim of a violation of article I, section 19, even when the
State is a defendant, there is no right to a money judgment for such a violation.").

 The Board next argues that, because Garcia "makes no reference to any specific
actions in equity in his First Amended Petition . . . the only relief he requests for
constitutional violations is money damages, over which this Court does not have
jurisdiction." However, "in determining the nature of a lawsuit, we do not rely on the terms
used to describe the cause of action but rather consider the facts alleged in the petition,
the rights asserted, and the relief sought." Ferguson, 97 S.W.3d at 220-21 (citing
Karagounis v. Bexar County Hosp. Dist., 70 S.W.3d 145, 147 (Tex. App.-San Antonio
2001, pet. denied)). Here, Garcia claims that the Board's decision did not comply with the
substantial evidence rule and that it failed to follow each step of the grievance procedure,
which "adversely affected [Garcia's] vested property right and violated the Texas
Constitution's provision of State due course of law." Garcia then seeks reinstatement as
one form of relief and specifically prays for reinstatement in his "Prayer." Garcia's First
Amended Petition clearly requests equitable relief, even though he also requests monetary
damages.

 Citing King v. Texas Department of Human Services, the Board asserts that, if this
Court determines Garcia's lawsuit is one for equitable relief, then by seeking reinstatement,
Garcia is attempting "to control an official within his legal authority to act, from which
attempt [the Board] is immune." 28 S.W.3d 27, 33 (Tex. App.-Austin, 2000, no pet.). In
King, the appellant, King, challenged the Department of Human Services' decision to
award to another person the position and promotion King sought. Stating, "[t]he trial court
would have jurisdiction only to declare the hiring process invalid and set aside the agency's
decision," the court held that King's request to vacate the award to the other person and
to award the position and promotion to King violated sovereign immunity as an attempt to
control an official acting within its legal authority. Id. Unlike King, however, Garcia seeks
reinstatement to his previously held position and not to a different position. Garcia does
not seek to control official actions. See Ferguson, 97 S.W.3d at 221 n.20; Harris County
v. Going, 896 S.W.2d 305, 308-09 (Tex. App.-Houston [1st Dist.] 1995, writ denied) (noting
that suits for reinstatement arising from constitutional violations are not prohibited by
governmental immunity).

 Finally, the Board alleges that this Court does not have jurisdiction over Garcia's
claim because Garcia did not demonstrate a clear and unambiguous waiver of sovereign
immunity. See Tooke v. City of Mexia, 197 S.W.3d 325, 331-33 (Tex. 2006). "[T]he state
may not assert sovereign immunity to avoid a claim that it took property without due
process of law. Although there is no cause of action for damages, a plaintiff whose
constitutional rights have been violated may sue for equitable relief." Bohannan v. Tex. Bd.
of Criminal Justice, 942 S.W.2d 113, 118 (Tex. App.-Austin 1997, writ denied). We
conclude that we have jurisdiction over Garcia's claim.

III. Substantial Evidence and Procedural Due Process


 Garcia first argues that the Board's decision to uphold the termination of his
employment was not supported by substantial evidence. In his second issue, Garcia
asserts that the Board's decision was arbitrary and capricious because his due process
rights had been violated.

A. Summary Judgment Standard of Review

 We review the trial court's order granting summary judgment de novo. See Edwards
Aquifer Auth. v. Day, 274 S.W.3d 742, 751 (Tex. App.-San Antonio 2008, pet. filed) (citing
Valence Operating Co. v. Dorsett, 164 S.W.3d 656, 661 (Tex.2005)). "'When conducting
a de novo review, the reviewing tribunal exercises its own judgment and redetermines each
issue of fact and law.'" Id. (quoting Quick v. City of Austin, 7 S.W.3d 109, 116 (Tex.
1998)). We do not give deference to the trial court's decision. See id. "When both parties
move for summary judgment on the same issue and the trial court grants one motion and
denies the other, we consider the summary judgment evidence presented by both parties,
determine all questions presented, and, if we determine the trial court erred, we must
render the judgment the trial court should have rendered." Id. (citing Valence, 164 S.W.3d
at 661). 

 The trial court reviewed the Board's decision under the substantial evidence
standard of review. See id. By granting the City's motion for summary judgment and
denying Garcia's, the trial court necessarily found that the Board's final order was
supported by substantial evidence. See id. Therefore, we must determine whether the
Board's actions were supported by substantial evidence.

B. Substantial Evidence

 1. Standard of Review

 "The substantial evidence standard of review does not allow a court to substitute its
judgment for that of the agency." R.R. Comm'n of Tex. v. Torch Operating Co., 912
S.W.2d 790, 792 (Tex. 1995). The reviewing court is not concerned with whether the
agency's conclusion was correct; its concern is whether there is some reasonable basis
in the record to support the agency's action. Id. "Substantial evidence requires only more
than a mere scintilla, and 'the evidence on the record actually may preponderate against
the decision of the agency and nonetheless amount to substantial evidence.'" Id. (quoting 
Tex. Health Facilities Comm'n v. Charter Medical-Dallas, Inc., 665 S.W.2d 446, 452 (Tex.
1984)). We presume that the Board's decision is supported by substantial evidence, and
Garcia has the burden to prove otherwise. Granek v. Tex. State Bd. of Medical Exam'rs,
172 S.W.3d 761, 778 (Tex. App.-Austin 2005, no pet.).

 2. Analysis

 Garcia's argument that the Board's decision was not based on substantial evidence
is combined with his assertions regarding due process violations. However, Garcia cites
the correct standard by which we are to evaluate the Board's decision. The Board upheld
the termination of Garcia's employment; thus, we are to determine whether "the evidence
[as a whole] is such that reasonable minds could have reached the conclusion that the
[Board] must have reached in order to justify its action." Charter Medical-Dallas, 665
S.W.2d at 453. We are "not bound by the reasons given by [the Board] in its order,
provided there is a valid basis for the action taken by the [Board]." Id. at 452.

 Laura Gallegos, a human resource analyst with the City, testified that Garcia tested
positive for cocaine in violation of several sections of HR 15.0, which provides that certain
violations require "automatic and mandatory termination upon first offense." Among other
violations of HR 15.0, Garcia's driving to the drug testing center while under the influence
of cocaine comprised operating a vehicle, while on City business and under the influence
of cocaine, a direct breach of HR 15.0. Additionally, Gallegos testified that HR 15.3 was
in effect when Garcia was randomly drug tested on November 23, 2004. 15.3 applied to
Garcia, and he violated HR 15.3 when he tested positive for cocaine.

 Keith Rose, M.D., a City medical review officer, testified that, on November 23,
2004, Garcia testified positive for cocaine.

 Santiago Salinas, Garcia's supervisor, testified that Garcia must have taken a City
vehicle to get his drug test and that Garcia did not comply with the reporting provision of
HR 15.3. HR 15.3 section IX provides in relevant part that "[e]mployees who seek help
through the Gas Superintendent, or designee, for a prohibited drug and/or alcohol related
problem or addiction before it is discovered through poor performance or the employee is
notified of testing authorized under this policy, shall be allowed to participate in a
rehabilitation program . . . ."

 Deborah Marroquin, director of the gas department, testified that HR 15.0 and HR
15.3 are "zero tolerance policies." She also agreed that, by signing the acknowledgment
for HR 15.0, Garcia affirmed that he was "responsible for knowing and abiding by the
contents of HR 15.3." Garcia's employment was terminated because he tested positive
for cocaine without complying with HR 15.3's reporting provision. 

 Garcia does not challenge the test results, and, he acknowledges being governed
by HR 15.0. Section VI of HR 15.0 makes the termination of employment automatic and
mandatory upon the first occurrence of "[o]perating a City vehicle . . . while on City
business while under the influence of any illegal drug . . . at any time as demonstrated by
a positive drug test result from a test administered under [HR 15.0]." Garcia admitted that
he drove a City vehicle to take the drug test in which he tested positive for cocaine. 
Looking at the evidence as a whole, we conclude that the evidence is such that reasonable
minds could have concluded, as the Board did, that Garcia violated the City's policies and
that the termination of his employment was warranted.

C. Procedural Due Process

 1. Standard of Review

 Even though the Board's decision is supported by substantial evidence, it may still
be arbitrary and capricious. See Charter Medical-Dallas, Inc., 665 S.W.2d at 454. Such
a situation arises when a person's procedural due process rights are violated. See id. The
proceedings of an administrative agency must comport with due process of law. Lewis v.
Metro. Sav. & Loan Ass'n, 550 S.W.2d 11, 14 (Tex. 1977); see City of Arlington v.
Centerfolds, Inc., 232 S.W.3d 238, 249-50 (Tex. App.-Fort Worth 2007, pet. denied). "At
a minimum, due process requires notice and an opportunity to be heard at a meaningful
time and in a meaningful manner." Centerfolds, Inc., 232 S.W.3d at 250 (citing Matthews
v. Eldridge, 424 U.S. 319, 333 (1976)). The amount of process due in a particular situation
is determined by a flexible standard, measured by factors the Supreme Court set out in
Matthews. (2) See id. (citing Matthews, 424 U.S. at 334).

 To determine the requisite amount of process, we balance the following three
factors: "(1) the private interest affected by the state action; (2) the risk of erroneous
deprivation of a constitutionally protected interest under the procedures used and the likely
benefit of any additional procedures; and (3) the government's interest, including the fiscal
and administrative burdens that additional procedural requirements would entail." Id.
(citing Matthews, 424 U.S. at 335). "[An employee whose employment has been
terminated] must be afforded an opportunity to present his version of the events both
before and after termination; however, due process imposes different requirements at each
stage because of the different interests present." Bexar County Sheriff's Civil Serv. Bd. v.
Davis, 802 S.W.2d 659, 662 (Tex. 1990). "'An elementary and fundamental requirement
of due process in any proceeding which is to be accorded finality is notice reasonably
calculated, under the circumstances, to apprise interested parties of the pendency of the
action and afford them the opportunity to present their objections.'" Peralta v. Heights
Med. Ctr., Inc., 485 U.S. 80, 84 (1988) (quoting Mullane v. Cent. Hanover Bank & Trust
Co., 339 U.S. 306, 314 (1950)).

 Garcia asserts five instances in which the Board violated his due process rights. 
First, Garcia claims that he was only subject to HR 15.0 and not to 15.3; thus, according
to Garcia, his employment should not have been terminated because (1) he was not
required to report his drug problem to the Gas Superintendent or his designee before
entering the City's Employee Assistance Program, and (2) he satisfied the reporting
requirement of HR 15.0 by reporting his problem to the EAP before the problem manifested
itself through poor performance. Second, Garcia claims that he received improper notice
of the amended letters of Contemplated Disciplinary Action and Termination. Third, Garcia
asserts that the Board improperly considered a prior drug offense. Fourth, Garcia claims
that the City created "false documents" when it amended the letters of Contemplated
Disciplinary Action and Termination to correct typographical errors. Finally, based on
arguments made in the City's Motion for Summary Judgment, Garcia argues that the Board
improperly considered offenses not included within the four corners of the Contemplated
Disciplinary Action and Termination letters. 

 2. City Policies HR 15.0 and City Policies HR 15.3

 a. City Policies HR 15.0

 Garcia contends that he is only subject to HR 15.0 and not to HR 15.3 and by
considering HR 15.3, the Board violated Garcia's due process rights. Garcia asserts that,
under HR 15.0, because he "sought treatment prior to the problem becoming evident
through declining job performance or before being requested by the City to take random
drug test," he cannot be disciplined for being under the influence of cocaine while working
on November 24, 2008. 

 City Policies HR 15.0 applies to all employees of the City of Corpus Christi. Garcia
signed an "Acknowledgment Form," which stated that "compliance with [HR 15.0] is a
condition of employment." Garcia asserts that, because he voluntarily sought diagnosis
and potential treatment before his problems became evident through his job performance
or before he was randomly selected for a drug test, the Board's disciplinary action was
improper. However, section IV of HR 15.0, to which Garcia cites, does not support his
argument. The section merely allows the employee to enter into the "Employee Assistance
Program" using the leave policies "currently available for other health-related problems." 
Section VI mandates employment termination upon the first instance of operating a City
vehicle while under the influence of an illegal drug. Reading the policy as a whole and
giving effect to each section, as we must, see City of San Antonio v. City of Boerne, 111
S.W.3d 22, 25 (Tex. 2003), we conclude that reading HR 15.0 as Garcia argues would lead
to an absurd result. Termination could not be "automatic and mandatory" if there is a way
to avoid it by preemptively seeking help. Section VI does not provide a reporting exception,
and we will not read one into the policy.

 b. City Policies HR 15.3

 Garcia asserts three reasons for why he is not subject to HR 15.3. First, there is no
acknowledgment form, signed by Garcia, indicating that he received a copy of or training
on HR 15.3 after he returned to the gas department, as there is for HR 15.0. Second,
Garcia claims that the City's training indicated, until Garcia's dismissal, that an employee
could seek help from the EAP and be protected from disciplinary action without having to
go through the gas superintendent or his designee. Finally, the letters of Contemplated
Disciplinary Action and Termination did not indicate that Garcia received or signed any City
policies during 2004, and the City is bound by the letters and cannot allege matters outside
of the letters. 

 Initially, we note that Garcia did sign an acknowledgment form for HR 15.0. That
form notified Garcia that he "may also be subject to the provisions of . . . City Policies HR
15.3 . . ." and that if he was "covered by more than one City [of Corpus Christi] alcohol and
drug Policy, . . . [he] must remain in compliance with each Policy which applies to the
position [he holds] as a condition of employment . . . ." Garcia also testified that he was
subject to HR 15.3, which is some evidence that he was required to comply with HR 15.3. 
See Mendoza v. Fidelity & Gty. Ins. Underwriters, Inc., 606 S.W.2d 692, 694 (Tex. 1980)
(noting that a party's "testimonial declarations which are contrary to his position are
quasi-admissions," which are some evidence but not conclusive evidence). 

 Garcia presented testimony and affidavits from five gas department foremen. Each
foreman contended that he had not been told that to be protected under the EAP, an
employee had to seek help through the gas superintendent or his designee, as required
by HR 15.3. Each foreman testified that it was his understanding that if he went to the
EAP, his employment would be protected even if he did not report his problem to the gas
superintendent or his designee.

 Gallegos testified that employees are trained on HR 15.3 once a year, and prior to
such training, each employee is provided with a copy of the policy. Gallegos also
acknowledged that, even without a signed acknowledgment form, employees must still
comply with the City's drug policies. Garcia's position as a Senior Gas System Foreman
is listed as a position covered by HR 15.3. Further, HR 15.3 states that "[e]mployees who
perform duties which involve gas operations, maintenance and emergency-response
functions are 'covered employees' under [15.3]." As a Senior Gas System Foreman,
Garcia was responsible for, among other things, constructing, installing, and maintaining
the "Natural Gas Distribution System," and responding to emergency service calls.

 We conclude that Garcia was subject to HR 15.3. Not only did he testify that he was
covered by the policy, he signed the HR 15.0 acknowledgment form recognizing that he
may be subject to HR 15.3. Additionally, his position was one specifically listed by HR 15.3
as covered by the policy, and as Gallegos testified, the employees received training at
least annually on HR 15.3. We agree with the Fort Worth Court of Appeals that

 [i]n law whatever fairly puts a person on inquiry is sufficient notice, where the
means of knowledge are at hand, which if pursued by the proper inquiry the
full truth might have been ascertained . . . . [A]ctual knowledge embraces
those things of which the one sought to be charged has express information,
and likewise those things which a reasonably diligent inquiry and exercise of
the means of information at hand would have disclosed.


Burlington Northern Railroad Co. v. Akpan, 943 S.W.2d 48, 51 (Tex. App.-Fort Worth
1997, no writ) (quoting Hexter v. Pratt, 10 S.W.2d 692, 693 (Tex. Comm'n App. 1928,
judgm't adopted)). Because Garcia was subject to HR 15.3, to be protected by that policy's
reporting provision, he must have sought help through the Gas Superintendent or his
designee. Having failed to do so, Garcia is not protected by the reporting provision.

 Finally, Garcia argues that the Contemplated Disciplinary Action and Termination
letters did not reference HR 15.3. However, the letters of Contemplated Disciplinary Action
and Termination admitted into evidence and included in the record both refer to HR 15.3. 
We conclude that the Contemplated Disciplinary Action and Termination letters referred
to HR 15.3.

 3. Contemplated Disciplinary Action and Termination Letters 

 Garcia next asserts that his due process rights were violated because the City failed
to properly serve amended versions of the Contemplated Disciplinary Action and
Termination letters upon Garcia. Article IV, section 1 of the Rules states, "Notice of
suspension shall be personally delivered to the employee or the employee's designee or
shall be mailed by certified mail, return receipt requested, to the employee's last known
address as noted in the employee's file in the Human Resources Department." Corpus
Christi, Tex., Rules & Regulations of the Civil Service Board art. IV, § 1 (July 13, 1999). 
Garcia admits that the City properly served the original versions of the letters on him, but
complains that the City sent the amended versions via fax and certified mail to Garcia's
attorney.

 The Rules do not provide a method of service for amended notices of disciplinary
proceedings. The Rules do permit notice of the setting of a hearing of an appeal to be
"given to the employee or the employee's designee. . . ." Id. The rules of civil procedure
also permit serving a party's designee with notice in the same manner as those utilized
here. See Tex. R. Civ. P. 21a. Due process is meant to be flexible and based on the
procedural protections demanded by the situation. Matthews, 424 U.S. at 334. We
conclude that, in the present case, because service of the original letters was properly
completed, Garcia's due process rights were not violated when the City served its
amended letters on Garcia's attorney.

 4. Prior Positive Drug Test

 Garcia complains that the Board based its decision, at least in part, on the fact that
Garcia had previously tested positive for cocaine. The Board said, in open session, when
deciding to uphold the termination of Garcia's employment, "the fact that Mr. Garcia has
failed a drug test as a City employee, not once, but twice, and the fact that we have a
serious public safety issue at hand . . . ." Garcia asserts that it was error for the Board to
base its decision on this fact because the Contemplated Disciplinary Action and
Termination letters did not mention the prior positive test as a basis for the termination. 
Garcia did not object when the evidence was presented to the Board.

 In deciding whether to uphold the City's decision, the Board's decision will be "based
on findings on the evidence presented." Corpus Christi, Tex., Rules & Regulations of the
Civil Service Board art. IV, § 4 H.3. (July 13, 1999). "Evidence will be admitted if it is of
that quality which responsible persons are accustomed to rely on in the conduct of serious
affairs." Id. art. IV, § 4 D.1. "Technical rules of legal and court procedure do not apply. 
The presiding officer rules on the admissibility of evidence." Id. "Formal exception to the
ruling of the presiding officer is not necessary. It is sufficient if the party at the time the
ruling is made or sought makes known to the presiding officer the actions desired." Id. art.
IV. § 4 D.5. 

 Nowhere does the record indicate that Garcia made known to the presiding officer
of the Board that he did not want Board to consider his prior positive test. There was no
formal objection at the time the prior test was offered and admitted. There was no time at
which Garcia informed the Board that it should not consider the prior test in its
deliberations. Because Garcia did not make his complaint known to the Board, and
because the Board's decision is to be "based on findings on the evidence presented," we
conclude that the Board did not err by considering Garcia's prior positive test. Id. art. IV.
§ 4 H.3.

 5. Corrected Dates in the Letters of Contemplated Disciplinary Action and
Termination


 Garcia complains that in amending the Contemplated Disciplinary Action and
Termination letters, the City changed several dates, thereby making the documents "false." 
The City changed the two dates on which Garcia had applied for employment: July 25,
1996 was changed to June 10, 1996 and April 23, 2003 was changed to February 25,
2003. The City also changed the date in the letter which stated the day on which Garcia
received drug policy training: May 28, 2003 was changed to April 28, 2003. 

 As the Board acknowledged, the amendments were to correct typos. The amended
letters did not change the substance of the letters, nor the reasons for disciplinary action
listed in the letters. In fact, the date change on the drug policy training was in direct
compliance with the Board's ordering, during its hearing on October 31, 2005, that the date
be changed. We believe that the letters, having been amended to correct typographical
errors, still meet the basic standard for proper notice, notice that is "'reasonably calculated,
under the circumstances, to apprise interested parties of the pendency of the action and
afford them the opportunity to present their objections.'" Peralta, 485 U.S. at 84 (quoting
Mullane, 339 U.S. at 314).

 6. Scope of Notice and Board's Considerations

 Garcia argues that the Board based its decision to terminate Garcia's employment
on actions not listed in the letters of Contemplated Disciplinary Action and Termination. 
Garcia bases this argument upon claims made by the City during summary judgment
proceedings. During those proceedings, the City argued that substantial evidence exists
of (1) Garcia's testing positive for cocaine on November 23, 2004; (2) Garcia's admission
to the Board that he put his and other's lives in jeopardy by working under the influence of
cocaine on November 23, 2004; (3) Garcia's having driven a City vehicle, on November 23,
2004, while under the influence of cocaine; and (4) Garcia's prior positive drug test. We
note that both letters referred to the positive drug test on November 23, 2004, and driving
a City vehicle while under the influence of cocaine. 

 Because this is a de novo review of the Board's decision, we "exercise[ ] [our] own
judgment and redetermine[ ] each issue of fact and law." See Day, 274 S.W.3d at 751. 
We do not consider the arguments made during the summary judgment proceedings
because we are not bound by the trial court's rulings. See id. Therefore, we do not
consider the City's arguments at the summary judgment hearing before the trial court in
determining whether Garcia's due process rights were properly observed during the
proceedings before the Board. Garcia bases this specific complaint on the City's
arguments during summary judgment, and we will not review those as part of our de novo
review of the Board's decision. We overrule Garcia's final due process argument.

 7. Matthews v. Eldridge

 The first factor in the Matthews test, the employee's interest in keeping his job, is
significant. See Davis, 802 S.W.2d 659 at 663. However, the risk of erroneous deprivation
of Garcia's job, based on the facts of this case, is minimal. See Matthews, 424 U.S. at
335; Davis, 802 S.W.2d at 663. "The notice actually provided to [Garcia], along with the
rights granted him to confront and cross-examine the [City's] witnesses and to present his
own witnesses, guaranteed that all relevant matters were adequately presented for
consideration by the Board." See Davis, 802 S.W.2d at 663. Before the hearing, Garcia
was provided with a list of the charges against him, mainly that he had violated City policy
by testing positive for cocaine on November 23, 2004. During the hearing, the City's
witnesses testified in Garcia's presence, and he was able to extensively cross examine
them and to object to any evidence. Garcia called his own witnesses to testify in his
defense. The record shows that Garcia was not surprised during the hearings and that he
was fully prepared to defend himself. Garcia even admitted that he failed the drug test in
violation of City policies. The probable value of additional safeguards, including more
strenuous notice provisions relating to amended letters, is negligible. Thus, the second
Matthews factor favors the City. See Matthews, 424 U.S. at 335.

 The fiscal and administrative burdens on the City would be great. See id. Among
other things, under Garcia's suggestions, the City would be required to foresee every
possible fact to which testimony would be given, so that the City could include it in its
letters to the employee. We do not believe that such a burden on the City would have
produced a more fair hearing nor that it would improve the accuracy of the decision-making
process. See Davis, 802 S.W.2d at 664. "Due process does not require that every
administrative proceeding contain the full procedural framework of a civil trial. '[D]ue
process is not so rigid as to require that the significant interests in informality, flexibility, and
economy must always be sacrificed.'" Id. (quoting Gagnon v. Scarpelli, 411 U.S. 778, 788
(1973)). We overrule Garcia's second issue on appeal.

IV. Conclusion 


 Having overruled Garcia's issues, we affirm the judgment of the district court.



 

 GINA M. BENAVIDES,

 Justice



Memorandum Opinion delivered and

filed this the 16th day of July, 2009. 
1. Garcia does not cite statutory authority for his appeal to the district court. See Stephens v. City of
Houston, 260 S.W.3d 163, 169 (Tex. App.-Houston [1st Dist.] 2008, no pet.) ("It is well-established that there
is no right to judicial review of an administrative order without an authorizing statute unless the order violates
the constitutional rights of the plaintiff.") (citing Houston Mun. Employees Pension Sys. v. Ferrell, 248 S.W.3d
151, 158 (Tex. 2007)). However, because Garcia claims the Board's order violates his constitutional rights,
we conclude that appeal to the district court was proper. See id.

2. The parties do not dispute that Garcia has a constitutionally protected property interest in his
continued employment with the City. See Bexar County Sheriff's Civil Serv. Bd. v. Davis
, 802 S.W.2d 659,
661 (Tex. 1990) ("An analysis of [a] procedural due process claim thus requires a two-part inquiry: whether
[the defendant] was deprived of a protected interest and, if so, what process was due to safeguard that
interest."). In Davis, the defendant could be dismissed from employment only "for cause," which creates a
protected interest in continuing employment. See id. at 662 n.2 (citing Logan v. Zimmerman Brush Co., 455
U.S. 422, 428 (1982)). The parties agree that we have a similar situation before us.